**Maurice Emile BEAUREGARD,**
**Appellant,**

v.

**William H. WINGARD and Ernest C.**
**Michael, Appellees.**

**No. 20332.**

United States Court of Appeals
Ninth Circuit.

June 20, 1966.

James Schwartz, Encino, Cal., for appellant.

James L. Focht, McInnis, Focht & Fitzgerald, San Diego, Cal., for appellees.

Before CHAMBERS, MERRILL and DUNIWAY, Circuit Judges.

MERRILL, Circuit Judge:

This is an appeal from judgment in favor of the police in a suit under the Civil Rights Act, Rev.Stat. § 1979

(1875), 42 U.S.C. 1983 (1964).[1] Appellant, Beauregard, was arrested, detained in jail and prosecuted for the crime of bookmaking, Calif.Penal Code 337a(1) and (3).[2] After trial, before court without jury, appellant was acquitted.[3] Now appellant claims that this arrest, jail detention, and prosecution violated his civil rights.

Appellant is a citizen of Oceanside, California, engaged in the tile business. Appellee Wingard is the Oceanside Chief of Police. Appellee Michael is an Oceanside police lieutenant. Appellant was arrested outside his store by Michael. Michael and an undercover agent named Cowley (brought in from San Diego) had been instructed by Wingard to attempt to place a bet on a horse race with appellant. While Michael waited outside, Cowley entered appellant's store.

According to Cowley's testimony the following transpired. Cowley told appellant that he was a friend of Jimmy Cusenza and that Jimmy had told him about the "set up." (Jimmy Cusenza, according to the record, was at one time the owner of a bar in Oceanside which required special police surveillance. Cusenza also had been convicted of gambling and had been denied a bail bond broker's license because of his poor character.) Cowley then told Beauregard he was interested in betting on "Old Snuggler." Beauregard then called to a woman in the front of the store with whom Cowley had, on first entering, spoken. "Hey, Tony, that is the same Caliente pig you are betting on." Cowley then asked Beauregard who the lady was. On learning she was Beauregard's wife, Cowley said that he hadn't said anything to her because he didn't know if she knew about the "set up." Cowley then placed a ten dollar bet with Beauregard, who remarked, "Boy, when Belmont opens, I

1. 42 U.S.C. § 1983:

"*Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

2. California Penal Code, § 337a(1) and (3):

"*Book making or pool-selling; keeping or occupying place with paraphernalia for recording wagers, etc.; stake holding; recording wagers; permitting unlawful use of room or enclosure; making or accepting wagers; punishment; application of section*

Every person,

1. Who engages in pool-selling or bookmaking, with or without writing, at any time or place; or

\*    \*    \*    \*    \*

3. Who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever \*    \*    \* is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year.

This section shall apply not only to persons who may commit any of the acts designated in subdivisions one to six inclusive of this section, as a business or occupation, but shall also apply to every person or persons who may do in a single instance any one of the acts specified in said subdivisions one to six inclusive."

3. The court ruled that there was no evidence of bookmaking as such, Calif.Penal Code, § 337a(1), and that as to section 337a(3) he had been "wrongfully induced into a compromising position to give it the appearance of a crime he had no intention whatsoever of committing."

will really make book." [4] Beauregard then left the store headed for the racetrack. Cowley followed, signalling Michael that Beauregard had taken the bet. Michael arrested Beauregard and took him to the police station, where he was booked. His prosecution and acquittal in the state court followed.

In the instant action Beauregard contends that the arrest by Michael violated his civil rights. He also contends that Wingard instituted his investigation without reasonable grounds upon which to base a suspicion that appellant was engaged in bookmaking; that the investigation was motivated by malice because of certain political attacks by Beauregard on Wingard; that the arrest and prosecution under these circumstances violated his civil rights.

After a full trial certain issues were submitted to the jury for special verdict. Although that verdict did not favor Wingard, it completely exonerated Michael. The jury found that: (1) Prior to the arrest appellee Wingard did not have reasonable grounds upon which to base a suspicion that appellant was engaged in bookmaking. (2) Wingard was motivated by malice and personal bias against appellant when he directed Cowley and Michael to attempt to place a bet with appellant and did not act in the interests of law enforcement.[5] (3) Michael was unaware of Wingard's motivation and was not so motivated himself and did not arrest appellant for any reason other than in the interests of law enforcement. (4) In making the arrest Michael did have reasonable grounds to believe that appellant had violated the bookmaking statute. (5) Michael made a full and fair disclosure to the prosecuting attorney of material events leading up to the arrest. (6) In signing the prosecution complaint Michael did not do so on orders from Wingard.

■ The District Judge supplemented the special verdict with certain findings of fact and rendered judgment in favor of appellees. The principal assignment of error challenges the judgment of the District Court as being not in accordance with the jury's special verdict. It is contended that the verdict required judgment for appellant. We do not agree.

■ Although the circumstances under which an arrest without probable cause gives rise to a claim under the Civil Rights Act may not yet be clearly established, see, e. g., Note; The Civil Rights Act of 1871: Continuing Vitality, 40 Notre Dame Law., 70, 80–84 (1964), it should in any event be clear that where probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established.

■ The jury's findings do not establish that appellant was arrested without probable cause. Quite to the contrary, it was expressly found that Michael had probable cause for the arrest. As for Wingard's involvement, it may simply be said that if an investigation succeeds in producing evidence of crime, probable cause for arrest is not nullified by the fact that the otherwise successful investigation was maliciously inspired.

Even under appellant's version of what occurred there is no question but that he committed the acts forbidden by California Penal Code, § 337a(3): He accepted money from Cowley to take to the racetrack and bet for Cowley.

---

4. Beauregard's version of these events contrasted sharply with Cowley's. Beauregard says that Cowley pleaded with Beauregard to take a bet to the track for him. Beauregard says he invited Cowley to the track several times but Cowley refused. The District Judge credited the testimony of Cowley.

5. Wingard disputed appellant as to these facts. He justified his investigation on the basis of a suspicion that appellant was engaged in bookmaking, due to certain suspicion-arousing facts. The court did not agree with the jury on these findings. In its memorandum decision it stated:

"While it is not necessary to discuss the question as to whether the answers to the first three interrogatories are supported by evidence, in my opinion there is considerable doubt."

Appellant argues that the jury's findings establish as matter of law that he was entrapped into commission of his crime[6] and that such entrapment destroys probable cause for arrest. Assuming arguendo that such would be the result, the same argument was made to the trial court and was rejected,[7] the court concluding on the basis of its own findings that "plaintiff was neither entrapped nor induced to accept the bet."

Appellant contends that the record establishes that the District Court's findings were clearly erroneous and that entrapment had been established as a matter of law. We do not agree.

Traditional formulations of entrapment emphasize two considerations: the criminal predisposition of the arrested person; overreaching by the arresting officer in pressure or persuasion to secure the performance of the forbidden acts by the arrested person.[8]

Thus whether appellant was entrapped would depend not on the motive of Wingard in initiating the investigation but on what took place between appellant and Cowley at the time that the bet transaction occurred and on the evidence of criminal predisposition there disclosed. By his testimony, which the District Judge credited, Cowley was not guilty of any overreaching. Further he was justified in believing that appellant was not innocent of criminal intent but had a predisposition to engage in bookmaking; was, indeed, already so engaged and eagerly looking forward to an opportunity to enlarge the scope of his unlawful operations.

Upon this record we cannot say that the court's findings with respect to entrapment were clearly erroneous; that

6. While the state court acquitted on the basis of entrapment, that determination is not controlling here.

7. The judge in his memorandum decision dealt with the matter as follows:

"Suggestion was made that the act of Wingard proximately resulted in the entrapment of plaintiff, and, thus, a false arrest. While the subject of entrapment was discussed at various times during the trial, the issue was not presented by counsel for plaintiff, either by way of a prepared instruction, proposed interrogatory, or a request that the issue of entrapment be submitted to the jury when it was determined to submit a special verdict to the jury in accordance with Fed.R.Civ.P. 49 (a).

"Aside from the failure to properly present the issue of entrapment, the evidence certainly does not warrant a finding there was entrapment as a matter of law, and does not, in my opinion, justify a finding that there was entrapment as a matter of fact. Although it is not deemed necessary to support the judgment in favor of the defendant Wingard, a finding on the issue of entrapment will be made in accordance with Fed.R.Civ.P. 49(a), as follows:

"The court finds that it is true that: (1) Officer Gene Cowley, a Deputy Sheriff of San Diego County, entered plaintiff's place of business about 1 P.M., August 30, 1960; (2) that Gene Cowley told plaintiff that he was a friend of Jim-my Cusenza; (3) that Cowley told plaintiff that Jimmy Cusenza had told him about the 'set up' and that Cowley wanted to place a bet on a horse running in the fifth race at Del Mar, and that plaintiff accepted $10.00 to bet on the horse; and (4) that Jimmy Cusenza was at one time . the owner of a bar in Oceanside which required special police surveillance, and had at one time been convicted of gambling, and had been denied a bail bond broker's license by the State of California because of his poor character.

"From the foregoing finding of fact it is concluded that plaintiff was neither entrapped nor induced to accept the bet."

8. Model Penal Code, § 2.13 (Proposed Official Draft 1962):
"Entrapment.
(1) A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
(a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
(b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."

appellant had not given Cowley and Michael reasonable cause to suppose that a crime had been committed. Even if we attribute to them the malicious purpose of Wingard the result would not be affected. The maliciously entertained hope had in fact been realized.

Judgment affirmed.