**Herman DIAMOND, Plaintiff,**

v.

**Dr. Frederick C. MARLAND et al., Defendants.**

**No. CV474-40.**

United States District Court, S. D. Georgia, Savannah Division.

May 28, 1975.

---

See also, D.C., 395 F.Supp. 429.

Jack Friday, Fletcher Farrington, Hill, Jones & Farrington, Savannah, Ga., for plaintiff.

Anton F. Solms, Jr., Savannah, Ga., for County Commissioners, Case & Argust.

Patricia T. Barmeyer, Asst. Atty. Gen., Atlanta, Ga., and John W. Sognier, Kennedy & Sognier, Savannah, Ga., for Marland, Maxwell & Cassidy.

## ORDER ON MOTIONS OF THE PARTIES FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

### I

#### The Litigation

In this action brought under the Civil Rights Act of 1871 Herman Diamond seeks damages against the defendants, Sergeant Horace Case and Officer Mike Argust of the Chatham County Police force and Dr. Frederick C. Marland and Rangers E. D. Maxwell and R. M. Cassidy who are employed by the Georgia Department of Natural Resources. Originally, the members of the Chatham County Commission were also parties defendant in the action but were eliminated as a result of the grant of their motion for summary judgment on May 25, 1975.

The complaint alleges that on April 4, 1973, Marland caused the four defendant law enforcement officers to unlawfully arrest and detain plaintiff. It is claimed that such arrest was illegal because it was made without a warrant. It is alleged that the acts of the defendants violated rights secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments. The action is maintained under 42 U.S.C. § 1983 which provides a civil remedy for deprivation of a citizen's federal constitutional rights and privileges by persons acting under color of state law.

Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343(4). Pendent jurisdiction is apparently evoked as to a cause of action under state law against Dr. Marland, Director of Marshland Protection, Department of Natural Resources, for malicious prosecution in causing a warrant to be issued charging Mr. Diamond with the crime of filling marshland without obtaining the license required by the Coastal Marshlands Protection Act of 1970.[1] The trial of the criminal case in the State Court of Chatham County in January, 1974, terminated in a jury verdict for Diamond.[2]

### II

#### The Motions and the Issues

Before me for decision are motions for summary judgment by the five defendants and also one on behalf of the plaintiff. Diamond seeks partial summary judgment on the issue of defendants' liability to him.

The five defendants constitute two classes: on the one hand, the Marshland Protection personnel (Marland, Cassidy and Maxwell) and, on the other, the two County police officers, Case and Argust. The two groups are represented by different counsel.

(A) Marland, Cassidy and Maxwell move for summary judgment on the ground that the record negates the existence of any genuine issue of fact as to the lawfulness of the arrest of Diamond by the Conservation Rangers. Attached to the motion, along with affidavits, is the transcript of the evidence in the criminal case of State of Georgia vs. Diamond. The defendants claim that probable cause unquestionably existed for the arrest and prosecution of Mr. Diamond for violation of the Marshlands Protection Act of 1970.

(B) The complaint alleges that County officers Case and Argust unlawfully ar-

---

1. The Act requires a permit to remove, fill, dredge or "otherwise alter any marshlands in this State within the estuarine area thereof without first obtaining a permit from the Coastal Marshlands Protection Agency." Ga.Code Ann. § 45–140(a).

2. If the malicious prosecution and false arrest claim are merely a blending or merger of the action against Marland under § 1983, the state common law or statutory tort, although actionable in the state forum, must rise to constitutional dimensions for the purpose of federal jurisdiction under the Civil Rights Act. Smith v. Spina, 477 F.2d 1140, 1143 (3rd Cir.). There may be a recovery pursuant to § 1983 only for "constitutional torts" committed under color of state law. Whirl v. Kern, 407 F.2d 781, 789, n. 9 (5th Cir.).

rested plaintiff on April 4, 1973, in that no warrant had issued at the time he was restrained of his liberty. The motion for summary judgment on behalf of the defendants in question asserts that they did not arrest plaintiff but acted reasonably in the exercise of their duties in responding to a call for assistance from another law enforcement officer, Ranger Cassidy. The affidavits accompanying the motion state that they reached the marshfill *after* the arrest of Mr. Diamond. Because of his "uncooperative attitude", it was decided that it would be better to use the police car (it had a protective screen between the front and rear seats) to carry Mr. Diamond to the County Courthouse.

(C) Plaintiff seeks partial summary judgment against the defendants on the issue of liability. Diamond contends that they effected a warrantless arrest "for an alleged misdemeanor not committed in their presence, thereby depriving the plaintiff of his rights of due process". Plaintiff says that the unlawful arrest renders defendants liable under § 1983 as a matter of law.

### III

#### *The Arrest on April 4, 1973*

Diamond admits that between 1965 and 1973 he had filled the marsh area in question. Tr., State trial, pp. 107, 108. Dr. Frederick C. Marland is Director of Marshland Protection. Plaintiff admits that on August 6, 1972, during a visit to the site the latter advised him that the fill work in progress was illegal. Admission No. 17. Diamond had no permit from the State Agency. Nor did he have one from the Corps of Engineers which also possessed jurisdiction over the filling of the marsh site. In 1972 the Army asked Diamond to desist from the alleged dumping. He denied its jurisdiction over the marshfill and continued the fill work.

On the afternoon of April 4, 1973, Marland as Director of Marshland Protection was making a routine inspection in the Wilmington Island area. He observed a dump truck and followed it. Observing a bulldozer at the site of the Diamond marshfill, he stopped. The dump truck loaded with fill arrived shortly thereafter. Diamond was warned by Marland not to dump on the marsh.[3] "Just watch me," was the reply. According to Dr. Marland, the fill material was dumped from the truck and Diamond got on the bulldozer and started pushing the material into the marsh. Tr., State trial, p. 22–23. Dr. Marland has no authority to arrest and he called the Conservation Rangers. Upon their arrival, Diamond was placed under arrest, apparently by Ranger Cassidy. Ranger Maxwell denies that he arrested Diamond. The plaintiff says that both Rangers placed him under arrest and did so at Marland's direction.

Considerable heat was generated by all this. Dr. Marland called the County police on the car radio to request assistance. Mr. Diamond states in an affidavit that when County Officers Case and Argust arrived on the scene, Marland told them, "I want that man arrested." Argust informed him, "You're under arrest." When Diamond remonstrated, Officer Case "put his hand on his gun, slightly raised it out of the holster and threatened, 'If you don't go with me, I'll use this on you.'" According to Diamond, they pulled him toward the police car. He was taken to the Courthouse. Case and Argust claim that they merely responded to a call directing them to assist Ranger Cassidy.

Diamond contends that his arrest was illegal because it was made on the basis of an alleged offense constituting a misdemeanor which was not committed in the immediate presence of any of the arresting officers. "None of the four officers who arrested me saw or claim to

---

3. When the existence of the marshfill came to the attention of the Corps of Engineers in 1972, Mr. Diamond was requested by let-

ter to desist from further filling of the area. He replied that his property was not within the jurisdiction of the Corps of Engineers.

have seen the events for which I was arrested". This is not entirely accurate. Ranger Cassidy testified at the State Court hearing that on his arrival at the Diamond site he observed a truck dump a load of sand or dirt into the existing fill and that some of it fell into the marshgrass. Tr., State trial, pp. 80, 82. Cassidy observed, according to his affidavit, fresh dirt or sand in the stumps and in the marsh adjacent to the fill.

In answer to requests for admissions Mr. Diamond admits that Cassidy walked out into the fill area. However, he denies that he pushed any dirt into the marshgrass or that the Rangers observed him do so. Plaintiff does not deny that after being told by Marland to stop dumping on the marshfill he continued to use the bulldozer to push dirt or sand thereon. He admits that he had ordered and that there was delivered at the site on the day of his arrest at least three truckloads of fill material. At the State Court trial Diamond testified that there were several stumps on the edge of the fill which were not in the marsh and that he at no time placed any dirt on the marsh side of the stumps. He explained that he was merely seeking to prevent erosion on the mainland side of the stumps. Tr., pp. 114–118.

Such, in conspect, are the events of the warrantless arrest—the seed-corn of this § 1983 action.

### IV

*Warrantless Arrests for Misdemeanors under Georgia Law*

Diamond contends that under Georgia law a warrantless arrest for a misdemeanor is illegal unless committed in the presence of the arresting officer and he insists that probable cause is not the test of validity of an arrest in a misdemeanor charge. His counsel argue that an arrest that is unlawful under state law constitutes a transgression of federal constitutional rights and may be made the basis of an action against an officer under § 1983. See Antelope v. George, 211 F.Supp. 657 (D., Idaho). It is further contended by Diamond that even if the validity of his arrest should not be governed by Georgia law, a violation of federal due process would result were legality measured by common-law standards.

Marland, Cassidy and Maxwell (and also the two County police officers) maintain that the undisputed facts, considered along with the doctrine of collateral estoppel,[4] conclusively demonstrate that there was probable cause and a reasonable good-faith belief as to the existence thereof for the arrest of plaintiff.

It becomes necessary to explore the Georgia law as to the lawfulness of the arrest; the matter of whether state law is the criterion for violation of Fourth and Fourteenth Amendment rights, and, if not, by what standard the federal Constitution measures the unlawfulness of state arrests for the purpose of an action under § 1983.

In this State "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be failure of justice for want of an officer to issue a warrant."[5] Ga.Code Ann. § 27–207. That section is a codification of the common-law rule of arrest. Yates v. State, 127 Ga. 813, 56 S.E. 1017. At common law an arrest for a felony could

---

4. Collateral estoppel is claimed to arise out of the findings and conclusions of this Court in United States v. Diamond (April 7, 1974) which was recently affirmed by the Fifth Circuit. See United States et al. v. Diamond, 512 F.2d 157. That was an action to enjoin Mr. Diamond, pursuant to 33 U.S.C. §§ 403, 407, from filling tidal marsh on a navigable stream without a permit from the Corps of Engineers. I will recur to the subject of collateral estoppel and its effect, if any, on this litigation.

5. A private person may make an arrest where a misdemeanor is committed in his presence or within his immediate knowledge. Ga.Code Ann. § 27–211. Defendants contend that Dr. Marland would have been authorized to make a citizen's arrest.

not be made without a warrant unless it also involved a breach of the peace. 6 C.J.S. Arrest § 6; Blackstone's Commentaries, IV, 292. The Georgia statute liberalized the common-law rule as to warrantless arrests for misdemeanors. The courts of this State have construed "in his presence" as also meaning "within his immediate knowledge". Piedmont Hotel Company v. Henderson, 9 Ga.App. 672, 72 S.E. 51. "An offense is committed in the presence of an officer when senses of the officer gave him knowledge the offense is being committed." Novak v. State, 130 Ga.App. 780, 781, 204 S.E.2d 491, 492.

In construing § 27–207, the Courts of Georgia have engrafted upon it the requirement of probable cause. United States v. Romano, 482 F.2d 1183, 1189 (5th Cir.). "[T]here must be probable cause" for the arrest. Kelly v. State, 129 Ga.App. 131, 132, 198 S.E.2d 910. See also Rockholt v. State, 129 Ga.App. 99, 198 S.E.2d 885; Reid v. State, 129 Ga.App. 41, 42, 198 S.E.2d 358; Peters v. State, 114 Ga. 595, 152 S.W.2d 647. "The crucial question is whether the knowledge of the related facts and circumstances gave the police officers . . . probable cause and reasonable grounds to believe that the appellant had committed an offense. If it did, the arrest, even without a warrant, was legal . . . . . It is the function of the court to determine if the facts upon which the officer acted would warrant a man of reasonable caution to believe that an offense had been committed." Johnson v. State, 230 Ga. 196, 198, 196 S.E.2d 385, 387. It is clear that the appellate courts of this State have read into the Georgia statute federal constitutional standards governing warrantless arrests which are found in Draper v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327; Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L.Ed. 543.

It may be that the adoption of the federal constitutional standard of rea-

sonableness in warrantless arrests is limited to felonies. I do not think so. It has been said: "An arrest without a warrant may be made when justified regardless of whether the offense is a misdemeanor or a felony. However, somewhat greater latitude may be allowed in felony cases." See Criminal Arrest in Georgia, A Manual for Peace Officers, Institute of Government, The University of Georgia (1974), p. 18. In the instance of narcotics and drug control a distinction is preserved under Georgia law between arrests in the instance of an offense committed in the officer's presence and those in which "he has probable cause to believe that the person to be arrested has committed or is committing a violation . . . which may constitute a felony." Ga.Code Ann. § 79A–824(a)(3); Ga.Laws, 1974, p. 253. See also the similar, prior legislation, § 79A–824(a)(3). The "in his presence" test is adopted in the case of arrests for violations of the State motor vehicle law. Ga.Code Ann. § 27–222.

But even if the standard for arrest in misdemeanor and felony cases differs in Georgia, that factor is irrelevant in this litigation. Diamond's action is based on infringement of federally guaranteed rights. The criteria for valid arrest in felony as well as misdemeanor offenses are those recognized by the Constitution of the United States. It does not heed the vagaries and variations of the common law and state statutes involving power to arrest in misdemeanor cases.

V

*Federal Constitutional Standards as to Warrantless State Arrests*

Where an unlawful state arrest is the basis of an action for violation of Fourth and Fourteenth Amendment rights, federal constitutional standards are the appropriate measure of the conduct of the arresting officer. The vindication of federal rights under 42 U.S.C. § 1983 is determinable by federal law. Bergstralh v. Lowe, 504 F.2d 1276 (9th Cir.); Sullivan v. Murphy,

156 U.S.App.D.C. 28, 478 F.2d 938, 972, cert. den. 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125; Wells v. Ward, 470 F.2d 1185, 1186 (10th Cir.); Anderson v. Haas, 341 F.2d 497, 499 (3rd Cir.); Nesmith v. Alford, 318 F.2d 110 (5th Cir.); reh. denied, 319 F.2d 859 (5 Cir.), cert. den. 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420; Ellenburg v. Shepherd, 304 F.Supp. 1059 (E.D., Tenn.). In a federal habeas corpus court the test of the legality of a state arrest is "federal probable cause". Paige v. Potts, 354 F. 2d 212, 214 (5th Cir.).

■ Even if a police officer violates a state arrest statute, he would not be liable under the civil rights act unless he also violated federal constitutional law governing warrantless arrests. The Fourth Amendment does not prohibit arrests committed outside the presence of the arresting state officer. Street v. Surdyka, 492 F.2d 368, 372 (4th Cir.).

■ An arrest without probable cause to believe that the accused has violated a criminal statute confers a right of action for deprivation of federal constitutional privileges under § 1983. Droysen v. Hansen, 59 F.R.D. 483 (E.D., Wis.); Carter v. Carlson, 144 U.S.App. D.C. 388, 447 F.2d 358, 361; Daly v. Pedersen, 278 F.Supp. 88 (D., Minn.). The converse is true and where such cause exists no civil rights violation results from the warrantless arrest. Martin v. Duffie, 327 F.Supp. 960 (D., N. M.), reversed on other grounds, 9 Cir., 463 F.2d 464; Daly v. Pedersen, supra, 91; Beauregard v. Wingard, 362 F.2d 901 (9th Cir.).

■ The Fourth Amendment test of probable cause is satisfied by the reasonableness thereof. "Probable cause" and "reasonable grounds" mean substantially the same thing. Draper v. United States, supra, 358 U.S. 310, n. 3, 79 S. Ct. 329, 3 L.Ed.2d 327. In applying the standard of probable cause, federal courts determine whether the arresting officers "possess knowledge of facts and circumstances gained from reasonably trustworthy sources of information sufficient to justify a man of reasonable caution and prudence in believing that the arrested person has committed or is committing an offense." Miller v. United States, 356 F.2d 63, 66 (5th Cir.); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134; Carroll v. United States, supra, 267 U.S. 156, 45 S.Ct. 280. Probable cause for arrest is to be decided by courts on the basis of *collective* information of the police involved in the arrest rather than upon the extent of knowledge of the particular officer making the arrest. United States v. Troutman, 458 F.2d 217 (10th Cir.); United States v. Jones, 352 F.Supp. 369, 377 (S.D., Ga.).

■ In a civil rights action based on warrantless arrest by state officers under a mistaken belief as to a fact, the reasonableness of that belief is important. Rodriguez v. Jones, 473 F.2d 599, 605–606 (5th Cir.). Liability for an unlawful arrest under § 1983 has been said to depend on the partly subjective test of the reasonable good-faith belief in its legality rather than on the objective test of "probable cause". Hill v. Rowland, 474 F.2d 1374, 1377 (4th Cir.). See also "Police Action in Connection with Arrest as Violation of Civil Rights Act, 42 U.S.C. § 1983", 1 ALR Fed. 519, 522–523.

## VI

### *The Federal Standard as to Warrantless State Arrests for a Misdemeanor*

■ Plaintiff's response to the foregoing is that granting that under § 1983 federal constitutional standards govern they are controlling only in felony cases and are not the measure of the constitutionality of warrantless state arrests for misdemeanors not committed in the presence of the arresting officer. Mr. Diamond's position appears to be that the common-law rule as to the lawfulness of arrests without warrant for offenses below the felony grade is imported into the Fourth Amendment.

"The constitutional restrictions on arrest are derived from the fourth amendment's prohibition of unreasonable seizures. Because the Supreme Court has interpreted the fourth amendment in light of the law that existed when the Bill of Rights was adopted, . . . it might be argued that the fourth amendment incorporates the common law's restrictions on warrantless arrests for misdemeanors." Street v. Surdyka, *supra*, 492 F.2d 371.

■ In crystalline terms the Fourth Circuit answered any such argument. Stating that the Supreme Court has never given constitutional force to this element of the common-law rule, it said: "We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence. The difference between felonies and misdemeanors is no longer as significant as it was at common law." The Court ruled that in the § 1983 claim the trial judge erroneously gave the plaintiff the benefit of the common law restriction on misdemeanor arrests. Good faith and reasonable belief in the validity of the arrest, it indicated, are the appropriate standards in testing the arresting officer's liability for a warrantless arrest. See 492 F.2d 372–374.[6]

Bergstralh v. Lowe, *supra*, 504 F.2d 1276 involved a claim under § 1983 arising out of an arrest for a misdemeanor in Oregon. Under the law of that State, warrantless arrest for that crime can be made only when it is committed in the officer's presence. The Court said that the "lawfulness of a state arrest by state police is to be determined by state law so long as the state law is not inconsistent with the federal Constitution." In a concurring opinion, Chief Judge Chambers said, "The vindication of federal rights under 42 U.S.C. § 1983 is to be determined by federal law." A majority of the Ninth Circuit panel in *Bergstralh* upheld the trial judge's ruling that probable cause existed for the warrantless arrest made for disorderly conduct.

■ Federal constitutional standards as to warrantless arrests control in the instant case. Under them, no distinction exists between felony and misdemeanor in respect to probable cause and good faith belief. Where an arrest is made by an officer for a misdemeanor committed out of his presence, probable cause therefor may be established by the possession of knowledge and facts justifying the belief on the part of one of reasonable prudence that the person arrested was guilty of the crime charged.

## VII

### *Collateral Estoppel*

Earlier in this Order I referred to the doctrine of collateral estoppel. The motions of the defendants for summary judgment are based on the record, including affidavits. Further support is claimed in the form of the binding effect upon Diamond of the findings and adjudications in this Court in the injunction action brought through the

6. Federal statutory authorization for warrantless arrests in misdemeanor cases does not establish the constitutional norm. The power of federal law enforcement officers to make misdemeanor arrests, in general, follows the common-law rule as to commission of the crime in the presence of the arresting officer. Carroll v. United States, *supra;* United States v. Strickland, 62 F.Supp. 468, 471 (W.D., S.C.); Clay v. United States, 239 F.2d 196, 201–202 (5th Cir.). F.B.I. agents may make misdemeanor arrests for federal offenses "committed in their presence". 18 U.S.C. § 3052. So may internal revenue enforcement officers. 26 U.S.C. § 7608(a), (b). In federal narcotics offenses an arrest may be made where "the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." 26 U.S.C. § 7607. There is no limitation of the reasonableness theory to felonies. Formerly, all narcotics offenses were felonies. Under the Act of 1970, a class of misdemeanors is created. It follows that in such cases the "reasonable grounds" standard is applicable. See Street v. Surdyka, at 372, n. 6.

Corps of Engineers in 1973 alleging that he filled tidal marshland adjacent to a navigable stream without obtaining the permit required by federal regulations.[7] As noted, the judgment was affirmed on appeal.

Collateral estoppel is thus defined in Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122:

> "under the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."

See also Intern. Ass'n of Mach. & Aero. Wkrs. v. Nix, 512 F.2d 125 (5th Cir.); Port Arthur Towing Co. v. Owens-Illinois, Inc., 492 F.2d 688, 692, n. 6 (5th Cir.); James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451, 458–59 (5th Cir.).

The defendants assert that certain findings and rulings in the injunction proceeding by the United States against Diamond are crucial to this case and mandate summary judgment. Taken in conjunction with his admissions, the rulings conclusively establish, they contend, a violation of Section 5(a) of the Georgia Coastal Marshlands Protection Act requiring a permit before filling marsh in the estuarine area. The findings which defendants regard as crucial in

the civil rights case and which they say cannot be collaterally relitigated are:

The area of Diamond's fill consisted of marshland in 1964 (Finding of Fact # 9) and would have been inundated at mean high water had it not been filled. (Finding of Fact # 21).

At mean high water all of the marsh lying to the eastward of the fill is inundated. (Finding of Fact # 6).

Drillings made on the fill site down to the natural ground surface produced marsh grass, marsh peat and clay which is indigenous to marshland. (Finding of Fact # 33).

Diamond had determined to fill the marshland area in question; obtained a County Permit to do so; planned to erect a house on the fill, and caused or knew that the marsh area in issue was being filled with stumps, debris, logs and dirt. Diamond filled the two-acre marsh area without a Permit from the Army and continued to fill same after being warned that such activity was illegal. (Finding of Fact # 20).

█ To the extent that the above findings are relevant to the present litigation, I think they constitute a collateral estoppel precluding the relitigation thereof. The facts that this Court found in United States v. Diamond also foreclose denial by the plaintiff that, in its original state, the area he filled constituted marshland subject to the Protection Act of 1970.[8]

█ Diamond himself relies on collateral estoppel, claiming that his acquittal on the State charge conclusively establishes that no probable cause for his arrest existed. This overlooks the dif-

---

7. See 33 U.S.C. §§ 403, 407; 237 Federal Register, No. 176, Part 209.260; 33 C.F.R. § 209.150.

8. Federal regulations regulate the filling or dumping in marshland covered by tides at mean high water level. Under the Georgia Coastal Marshlands Protection Act, the "estuarine area" is defined as that upon which various salt-marsh grasses grow. It embraces all tidally-influenced waters, marshes

and marshlands, lying within a tide-elevation range from five and six-tenths feet above mean tide level and below. Under Georgia law, jurisdiction of the Marshlands Protection Agency attaches at a tide level approximately two feet higher in elevation than that conferring federal jurisdiction over marshes adjacent to navigable water. See United States v. Lewis, 355 F.Supp. 1132, 1140, n. 9 (S.D., Ga.).

ference in the degree of proof required in civil and criminal cases. An acquittal is merely "an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused". Lewis v. Frick, 233 U.S. 291, 302, 34 S.Ct. 488, 492, 58 L.Ed. 967. See also Helvering, Commissioner of Internal Revenue v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 and United States v. National Association of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007.

## VIII

### Discussion of Defendants' Motions

■ Under Georgia law governing suits for malicious prosecution, the want of probable cause is a question for the jury except where the material facts are not in dispute or only one reasonable inference can be drawn from the evidence. The question is not whether the plaintiff was guilty but whether the defendant had reasonable cause to so believe— a reasonable belief that probable cause for the prosecution existed. See West v. Baumgartner, 228 Ga. 671, 676–677, 187 S.E.2d 665 and citations. This accords with the rule in other states respecting the province of juries in actions for malicious prosecution. 54 C.J.S. Malicious Prosecution § 97; 52 Am.Jur.2d Malicious Prosecution § 184.

■ Where the constitutional validity of a warrantless arrest is challenged in a criminal case, it is the function of the court to determine whether the facts available to the officer at the moment of arrest would warrant a man of reasonable caution in a belief that an offense had been committed. Beck v. Ohio, supra, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L. Ed.2d 142; Turman v. Beto, 271 F. Supp. 808 (N.D., Texas), aff'd. 404 F.2d 872 (5th Cir.).

■ While there is an apparent absence of decisional law on the subject, I conclude that the existence of probable cause for warrantless arrest is a question of fact for a jury in a § 1983 action against the arresting officer for unconstitutional restraint of liberty. If the evidence presents, however, no genuine issue as to reasonable grounds for good-faith belief that the defendant had committed the offense for which he was arrested, existence of probable cause becomes a question for the court.

Summary judgment is a useful instrument for pre-trial distinguishing between the apparent and the real. The procedure is adapted to weed out cases demonstrably devoid of merit in law or fact. Sometimes, however, the shortcutting of trials by resort to Rule 56 proves that "the longest way around is the shortest way through". Gray Tool Company v. Humble Oil & Refining Co., 186 F.2d 365 (5th Cir.). Good faith and honest belief are subjective standards measuring the state of one's mind. Summary treatment is apt to be inappropriate when "subjective feelings and reactions" are material.[9] Determination of prudent conduct is also a precarious area for summary judgment which thrives under blue skies and wilts in cloudy climes. This Court finds the climate favorable for the grant thereof in the instant case.

■ An evidentiary background for defendants' motions exists in great detail. I conclude that the subjective element of good faith belief by the State officers conjoins with objective evidence of the alleged offense to make out an incontrovertible case of probable cause for an arrest without a warrant.

In filling the marshland abutting the highland Mr. Diamond for several years had violated the federal law and regulations prohibiting dumping in tidal marshes along a navigable stream, in the absence of a permit from the Corps of Engineers. While plaintiff was acquit-

9. 6 Moore's Federal Practice § 56.17 [41.– 1]; Sentry Corporation v. Conal International Corp., 164 F.Supp. 770 (S.D., N.Y.); Alabama Great Southern Railroad Company v. Louisville and Nashville Railroad Company, 224 F.2d 1 (5th Cir.); Friedman v. Meyers, 482 F.2d 435 (2nd Cir.).

ted on the State charge, compelling reasons nonetheless existed for the State official and agents to believe that the work in progress violated Georgia law. Both the Corps and the Protection Agency had warned Diamond within a year of the arrest that the marshfill was unlawful. Their admonitions were ignored.[10]

■ On April 14, 1973, the State Director of Marshland Protection asked Diamond to desist from continuing the marshfill. Dr. Marland says that Diamond's response was to bulldoze more fill into the marsh. Tr., State trial, p. 22. Plaintiff denies only the fact that any material he pushed onto the fill fell into the marsh. Who is right or wrong in that respect is immaterial for the purposes of probable cause. Even if Marland's actions were maliciously inspired as is claimed, probable cause for the arrest is not nullified. Beauregard v. Wingard, *supra*, 362 F.2d 903.

■ There may be legal uncertainty whether it amounts to a crime under the Marshlands Protection Act of 1970 for an existing, illegal marshfill to be enlarged or extended by adding new fill material thereto. But police officers are not required to predict how courts will interpret or how they will decide as to the validity of a law. In either case the defense of good faith and probable cause is available to defendants in actions under § 1983. See Pierson v. Ray, 386 U. S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. I do not think probable cause in a case like this depends on whether any of the fill material spilled into the marsh during the filling operation. The constitutionality of an arrest does not hinge on quodlibets.

■ When Diamond persisted in continuing the fill work Marland called the Rangers who responded and placed plaintiff under arrest at his direction.[11] Earlier in this Opinion, I cited cases to the effect that the individual knowledge of the officer who made the arrest is not the standard by which the legality of a warrantless arrest is measured. Existence of probable cause is determinable on the basis of the collective information of the officers participating in the arrest. Thus, the knowledge and observations of Marland become justification for Cassidy's actions pursuant to the information passed on to him. The Ranger states in his affidavit that when he arrived at the fill Marland informed him that Diamond pushed fill into the marsh in his presence.

This is not a case of warrantless arrest made some time after the offense, not at the scene thereof and on the basis of information from another officer. It was made at the place of the alleged crime and was effected *dum fervet opus*. Ranger Cassidy who made the arrest did not act merely on the strength of orders or information furnished by his superior. There was objective support for his conclusion that an offense had been or was being committed by Diamond. He says that he saw a dump truck empty a load of sand onto the existing fill. When he walked out on the marshfill, he observed fresh dirt or sand in the stumps at the edge thereof and in the adjacent marsh. Plaintiff was then placed under arrest by Cassidy who says that he believed then and believes now that he had "probable cause to arrest Herman Diamond for depositing fill in marshlands without a permit".

There is a dispute as to whether the two County police officers actually arrested Diamond after they were called to assist the Rangers as a result of what

---

10. Dr. Marland testified that in July, 1972, "Mr. Diamond indicated to me at the time that he had legal training and in many areas he was more familiar with the various aspects of the law than I was, but basically, I'm familiar with the statute—the Georgia statute that I'm asked to work with and enforce." ·Tr., State trial, p. 17.

11. If the arrest were invalid under federal constitutional standards, Dr. Marland could be held liable under § 1983 on the theory of his direct personal involvement in that as a supervisor he personally directed a subordinate to commit the challenged act. See Downs v. Department of Public Welfare et al., 368 F.Supp. 454, 464 (E.D., Pa.).

Cassidy described as his "belligerent attitude and speech". If the Rangers had probable cause to arrest plaintiff, certainly the County police possessed authority to assist in effectuating it.[12] If, rather than arresting Mr. Diamond, the County police merely assisted the State authorities who already had done so, I think they were entitled to rely on the legality of the initial arrest without inquiring into the niceties of its validity.

If conflicts appear in the evidence before me, they represent mere detail in a picture that leaves the viewer with a single impression of the whole. The inevitable effect of the composition is that, pursuant to federal constitutional standards, probable cause existed for an arrest without a warrant.

## ORDER

The motions of the defendants for summary judgment are granted and judgment will be entered dismissing the complaint.

12. While the authority on which the statement is based (Harrell v. State, 75 Ga. 842, 846) is differentiable, it has been said: "When making arrests law enforcement officers may summon other officers . . . to their assistance. When an arresting officer calls to a fellow officer for aid, it is the duty of the second officer to respond." See Criminal Arrest in Georgia, A Manual for Peace Officers, *op. cit.*, 38.