434 F.2d 1227
 Anthony GIORDANO, Appellant,
v.
Harry J. LEE, Edwin Roth and Roey Stetson, Appellees.
James GIAMMANCO, Appellant,
v.
Charles McKEONE and William Brown, Appellees.
James GIAMMANCO, Appellant,
v.
Harry J. LEE and John Weingart, Appellees.
 Nos. 19825-19827.
 United States Court of Appeals, Eighth Circuit.
 December 4, 1970.
 Rehearing En Banc and Rehearing Denied January 12, 1971.
 
 Irl B. Baris, St. Louis, for appellants.
 John J. FitzGibbon, Associate City Counselor, City of St. Louis, St. Louis, Mo., for appellees.
 Before MATTHES, Chief Judge, HEANEY, Circuit Judge and VAN PELT, Senior District Judge.
 MATTHES, Chief Judge.
 
 
 1
 These consolidated appeals result from three separate actions brought in the United States District Court for the Eastern District of Missouri for damages under the Civil Rights Act, 42 U. S.C. § 1983, for wrongful arrests alleged to have been made by the individually named police officers of the City of St. Louis. Motions for summary judgments by appellants were denied in each case and each cause was separately tried to a jury. Appellants' motions for directed verdicts also were denied, and a judgment was entered in each case for the defendant police officers in accordance with jury verdicts in their favor.[1]
 
 
 2
 The three actions in the district court involved four different arrests. No. 19,825 concerns the arrest without a warrant of appellant Giordano on March 30, 1967, by Capt. Lee, assisted by Lt. Roth and Det. Stetson. The record shows that on that date the named officers went to 2600 North Broadway in St. Louis to question Giordano about gambling activities and a murder which had occurred early that same morning at 4123 Chippewa Street, premises known to police to be the site of illicit gambling activities and known to have been frequented by Giordano. According to both the answers to the interrogatories and the testimony of the police officers, Giordano, when approached for questioning, became extremely nervous and grabbed at Capt. Lee's arm. At trial Capt. Lee testified that he had originally intended only to question Giordano, but that due to his violent behavior he placed him under arrest in order to avoid a more serious disturbance. Conversely, Giordano contended that he was grabbed and pushed by the police officers and that he was lawfully and peacefully conducting himself at the time of arrest.
 
 
 3
 No. 19,826 concerns the warrantless arrest of appellant Giammanco and one Licavoli (not a party to this action) by Capt. McKeone and Lt. Brown on April 19, 1967 at an American Legion Club for operating a handbook and card playing on that date. The record shows that in February of 1967 Capt. McKeone received information from the Intelligence Division of the Police Department that gambling was being conducted at the Legion Club, that an arrest for gambling had been made in January of 1967 in which gambling paraphernalia was seized, and that Giammanco and others had been seen at the Club. Pursuant to this information, a surveillance was placed on the Club. During the several weeks preceding the arrest in question, Capt. McKeone had personally observed Giammanco enter the Club. On a number of occasions he would come out of the Club, look about the area in a suspicious manner, and then re-enter the building. On the day of the arrest Capt. McKeone and Lt. Brown saw Giammanco enter the Club. They then approached the building, found the inner door locked, and knocked on the door. After a lapse of 3-5 minutes, during which time they heard voices and scuffling noises akin to the moving of furniture from inside, Licavoli, who had been arrested on those same premises some months earlier with gambling paraphernalia in his possession, opened the door. Capt. McKeone then attempted to interrogate Licavoli and Giammanco about gambling activities at the Club. Giammanco became excited, jumped out of his chair, began raising his voice and hurried to make a phone call. He and Licavoli were then placed under arrest.
 
 
 4
 No. 19,827 involves two separate arrests of appellant Giammanco by Capt. Lee and Sgt. Weingart. On May 9, 1967, those officers without a warrant arrested Giammanco for the robbery of an A & P Market. In their answers to interrogatories the officers stated that the arrest was made after Sgt. Weingart received a telephone call from an informant, known to him by voice, who identified Giammanco by name as the perpetrator of the robbery. At trial, it was also brought out that the informant had told the police that he saw Giammanco run from the market immediately after the robbery was committed. The officers testified that the informant was known to them by his unusual vocal characteristics and that he had previously given the police accurate data. Information given by this same person on other occasions had led to the recovery of a stolen KSD-TV movie camera and an arrest for buying and receiving stolen property and for possession of pornographic material. On another occasion, a tip given the police by the same informant led to the recovery of $40,000 worth of United States Postal Money Orders and a postal validating machine.
 
 
 5
 On February 23, 1968 Capt. Lee and Sgt. Weingart without a warrant arrested appellant Giammanco in a barber shop on Ninth and Delmar Streets for gambling. The arrest was made after Capt. Lee received a telephone call from a woman who told him that between 12:15 and 12:30 p. m. each day a white male used the barber shop telephone to call in betting tabs. The officers went to the barber shop at 12:15 p. m. to investigate and saw a man on the phone with a piece of paper in his hand. As he turned and saw the officers, he hurriedly hung up the phone. The police then recognized him as Giammanco and arrested him for gambling. Evidence adduced at trial revealed that at the time of arrest the officers knew that the barber shop had previously been the terminal point in a chain of gambling activities, whereby two men who made various stops in the city to pick up betting tabs would culminate their rounds at the barber shop. One of these men had been convicted of interstate transportation in aid of racketeering for his part in these activities. It was also shown that the barber shop was known to police as a place frequented by gamblers.
 
 
 6
 Appellants seek a reversal and a remand for a new trial on the question of damages only. They limit their contentions to claimed error in the district court's denial of their motions for summary judgment and for directed verdicts on the question of liability.
 
 
 7
 Before considering each of the issues raised, we take cognizance of some general principles concerning civil rights actions for wrongful arrest under 42 U.S.C. § 1983. The propriety of such an action has been recognized by the Supreme Court in Monroe v. Pape, 365 U. S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and most recently in Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). In order to recover it must be shown that the arresting officer was acting under color of state law and that he deprived plaintiff of a constitutional right. Adickes v. S. H. Kress & Co., supra at 150, 90 S.Ct. 1598, 26 L. Ed.2d 142; Whirl v. Kern, 407 F.2d 781, 789 (5th Cir. 1968), cert. denied, 396 U. S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). In Pierson v. Ray, supra, 386 U.S. at 557, 87 S.Ct. 1213, 18 L.Ed.2d 288, the Supreme Court held that "good faith and probable cause" is a defense to the action.[2] Our research also leads us to conclude that in civil rights actions of this nature, where a genuine issue of fact on the existence of probable cause for arrest is presented, the question should be submitted to the jury. See Adickes v. S. H. Kress & Co., supra; Anderson v. Haas, 341 F.2d 497 (3d Cir. 1965); Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963); see also Beauregard v. Wingard, 362 F.2d 901 (9th Cir. 1966); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963).
 
 
 8
 We now consider appellants' contention that the district court erred in refusing to enter summary judgments in their favor on the issues of liability. Appellants claim that they were entitled to summary judgments because the police officers' answers to interrogatories showed, as a matter of law, that the arrests were made without probable cause, and that no genuine issue of fact on this question was presented. We disagree.
 
 
 9
 Summary judgment under Rule 56, Fed.R.Civ.P., is an extreme remedy which should be sparingly employed. City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221, 223 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); Williams v. Chick, 373 F.2d 330, 331 (8th Cir. 1967); Smoot v. Chicago, Rock Island and Pacific Railroad, 378 F.2d 879, 883 (10th Cir. 1967), holding that granting a summary judgment under Rule 56 is a "drastic" remedy. Further, as we stated in Williams, supra at 332, "a summary judgment proceeding does not provide a very satisfactory approach in tort cases." In Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962) the Supreme Court set down the following guidelines on the application of summary judgment procedure:
 
 
 10
 "Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case `show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ.Proc. This rule authorizes summary judgment `only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial * * * [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967, (1944)."
 
 
 11
 It is settled doctrine that any inferences to be drawn from the underlying facts contained in the materials presented must be viewed in the light most favorable to the party opposing the motion for summary judgment. Adickes v. S. H. Kress & Co., supra, 398 U.S. at 158-159, 90 S.Ct. 1598, 26 L.Ed.2d 142; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Any doubt as to whether there is an issue of material fact for trial should be resolved against the moving party. Williams v. Chick, supra at 331; Jacobson v. Maryland Casualty Company, 336 F.2d 72, 74 (8th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 655, 13 L. Ed.2d 558 (1965); Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442 (7th Cir.), cert. denied, 384 U.S. 950, 1002, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).
 
 
 12
 In light of these principles we find that the district court, in each of these cases, properly denied the motions for summary judgment. In No. 19,825, clearly a disputed issue was presented as to whether appellant Giordano's alleged hysterical behavior precipitated his arrest. As to the actions brought by appellant Giammanco, the answers to his interrogatories did not conclusively demonstrate the unreliability of police informants or disclose in detail all the circumstances surrounding his arrests. Where the supporting evidentiary matter of the moving party reveals "unexplained gaps" or where the truth is not certain, the movant has not sustained the burden of demonstrating the absence of genuine issue of fact. See Adickes v. S. H. Kress & Co., supra, 398 U.S. at 158, 90 S.Ct. 1598, 26 L.Ed.2d 142; Williams v. Howard Johnson's Inc. of Washington, 323 F.2d 102, 107 (4th Cir. 1963).
 
 
 13
 This brings us to the assertion that the district court erred in refusing to grant appellants' motions for directed verdicts on the ground that the evidence presented showed, as a matter of law, that there was no probable cause for the arrests. It is fundamental that a motion for directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions. A directed verdict is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. Halladay v. Verschoor, 381 F.2d 100, 114 (8th Cir. 1967); Chicago Great Western Railway Company v. Casura, 234 F.2d 411, 447 (8th Cir. 1956); Lumbermens Mutual Casualty Company v. Rhodes, 403 F.2d 2, 7 (10th Cir. 1968), cert. denied, 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567 (1969). In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. Simpson v. Skelly Oil Co. 371 F.2d 563, 567 (8th Cir. 1967); Altrichter v. Shell Oil Co. 263 F.2d 377, 380 (8th Cir. 1959).
 
 
 14
 We pretermit a detailed review of the evidence bearing upon the issue of probable cause. Suffice it to say that we have carefully examined the record and have tested the sufficiency of the evidence, under the principles above enunciated, to determine the propriety of the submission of the issue of liability to the jury. Viewing the evidence as we must, in the light most favorable to the appellees, we are not constrained to hold that the district court erred in not granting directed verdicts for appellants. Rather, we think that the evidence adduced as to each of the four arrests, coupled with the inferences therefrom, was such that reasonable minds could differ as to whether or not the officers acted in good faith and with probable cause.
 
 
 15
 Accordingly, the judgments entered upon the jury verdicts should be and are hereby affirmed.
 
 
 
 Notes:
 
 
 [1]
 Nos. 19,825 and 19,826 were separately tried before a jury with Chief Judge Roy W. Harper presiding in each case. No. 19,827 was tried to a jury with Judge James H. Meredith presiding. In No. 19,825 Judge Harper directed a verdict for defendants Lt. Roth and Det. Stetson. It is not contended on appeal that the trial court's ruling as to those defendants was erroneous
 
 
 [2]
 In instructing the jury, the district court submitted the question of whether the police officers acted in good faith and with probable cause. No error as to this submission is claimed on appeal