Dennis NIX, Appellant,

v.

Donald SWEENEY et al., Appellees.

No. 77–1340.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1977.

Decided March 31, 1978.

Rehearing and Rehearing En Banc
Denied May 8, 1978.

Richard L. Geissal, Jr., St. Louis, Mo., for appellant; Martha Moody, American Civil Liberties Union, St. Louis, Mo., on the brief.

David O. Danis of Whalen, O'Connor & Danis, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, HEANEY, Circuit Judge, and HUNTER, District Judge.*

* The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri, sitting by designation.

GIBSON, Chief Judge.

Dennis Nix brought this action against the Village of Breckenridge Hills and certain of its officials for damages and injunctive relief arising out of his allegedly illegal arrest and the allegedly unlawful search, seizure, and photocopying of his property. The District Court granted a motion to dismiss the defendant Village of Breckenridge Hills because of the Missouri doctrine of sovereign immunity. The District Court also granted partial summary judgment for defendant Donald Sweeney, acting chief of police, because of its view that the arrest was made with probable cause. A jury determined the remaining issues against Nix. He appeals from the refusal of the District Court to grant his motion for a new trial. We reverse and remand.

On July 5, 1974, a shooting occurred at 9799 B St. Charles Rock Road, Breckenridge Hills, Missouri. Nix resided in the basement of that address. The main floor served as the office of the National Socialist White People's Party, St. Louis Unit, and as a bookstore, the White Power Information Center. Also residing at the address were Allen Balogh and David Farrah.

Witnesses to the shooting reported that Farrah and another individual had used Nix's green 1965 Chevrolet station wagon at the time of the shooting. Farrah and Balogh were arrested as being the two persons involved in the crime. The automobile was subsequently located at a parking lot with spent shell casings inside.

Nix left his place of employment when he learned of the shooting. He went to the Village Hall where he was arrested at 11:00 p. m., at the instance of Donald Sweeney, lieutenant and acting chief in the Police Department of the Village of Breckenridge Hills.

Nix was released at 6:00 a. m. on the following day without formal charges being filed. The complaint alleged in part:

From the time of Plaintiff's arrest and imprisonment until the time of Plaintiff's release the following morning, Defendants Donald Sweeney, Willard Jacobs and Gerald Sweeney did unlawfully break in and enter upon Plaintiff's said place of business and residence and did take therefrom all of Plaintiff's records, files, documents and other materials of varying natures, some of which were related to Plaintiff's business and personal affairs, and many of which were confidential records regarding Plaintiff's political organizing and political associations. The individual Defendants transported all said materials, documents, files and records to the police department of the Defendant Village of Breckenridge Hills, where all documentary materials were photocopied. Multiple copies of each document were made, in order that there would be sufficient copies of each document to convey said copies of each said document to various other law enforcement agencies. Copies of each said document were in fact given, on the orders of Defendants Donald Sweeney and Willard Jacobs, to various other law enforcement agencies. Several other copies of each document were retained by the Police Department of the Defendant Village of Breckenridge Hills.

Nix brought this action asserting the defendants[1] had unlawfully arrested and confined him and had unlawfully seized and copied his property. He claimed these acts deprived him of his rights under the first, fourth, fifth, ninth and fourteenth amendments to the Constitution of the United States. Jurisdiction was based on 42 U.S.C. §§ 1983 and 1985(3), and 28 U.S.C. §§ 1331 and 1343(1), (2), and (3).[2] Nix sought

---

[1]. The original complaint named Donald Sweeney, individually and as Chief of Police; Willard Jacobs, individually and as Commissioner of Police; Gerald (Jerome) Sweeney; and the Village of Breckenridge Hills, Missouri, as defendants. After the Village's motion to dismiss was granted, Nix filed an amended complaint against the remaining defendants. For reasons

not appearing in the record on appeal, Nix then dismissed defendants Willard Jacobs and Gerald (Jerome) Sweeney.

[2]. Diversity jurisdiction was also pleaded under 28 U.S.C. § 1332, stating, "[T]here are issues involving state law which this Court has the jurisdiction to hear * * *." However, the

$5,000,000 in actual damages; a like amount in punitive damages; a mandatory injunction requiring the return to him of "all files, papers, documents, materials and copies thereof now in the possession of Defendants"; and other equitable relief. The District Court denied all relief. Nix appeals, primarily complaining of the dismissal of the Village because of the Missouri sovereign immunity doctrine and the granting of summary judgment on the issue of probable cause for the arrest. We consider those points separately.

*Summary Judgment on the Arrest*

■ Fed.R.Civ.P. 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In determining the propriety of such action, the Supreme Court has stated all evidence must be interpreted in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The language of the Supreme Court indicates the Fed.R.Civ.P. 56 summary judgment standard is quite strict. The moving party must be entitled to judgment as a matter of law, and has the burden of establishing the absence of a genuine issue.

The Eighth Circuit has articulated the following guidelines to be used in applying Rule 56: "Summary judgment is an extreme remedy which is not to be granted unless the movant has established his right to judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any possible circumstances." *New England Mutual Life Insurance Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976); *Percival v. General Motors Corp.,* 539 F.2d 1126, 1128 (8th Cir. 1976). The party must be entitled

claims asserted are actually for alleged violation of Federal statutes or the Constitution.

"to relief 'beyond all doubt,' without 'room for controversy.'" *Williams v. Chick,* 373 F.2d 330, 331 (8th Cir. 1967).

■ In order to prevail on summary judgment in a false arrest case, the evidence, including admitted facts and disputed facts viewed in the light most favorable to the plaintiff, in the knowledge of the police officer ordering the arrest, must conclusively establish probable cause. *See Giordano v. Lee,* 434 F.2d 1227 (8th Cir. 1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971). Conflicting evidence on any issue would make that issue a jury question.

■ The Supreme Court discussed probable cause for arrest in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause exists if

the facts and circumstances within [the enforcement officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

379 U.S. at 91, 85 S.Ct. at 225. Probable cause for arrest, then, includes two aspects: first, that a crime has been committed, and, second, that the accused more probably than not participated in it.

In *Linn v. Garcia,* 531 F.2d 855 (8th Cir. 1976), a civil rights action involving a claim of false arrest, the Eighth Circuit held that each case involving the question of probable cause for arrest must be decided on its own facts. The court further noted: "Where the facts are in dispute or where they are subject to different inferences the question of probable cause is for the jury; however, where the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court." 531 F.2d at 861.

This position had been enunciated several years earlier in *Giordano v. Lee, supra.* Citing cases from the Third, Ninth and Tenth Circuits, the court stated: "Our re-

The plaintiff now resides in Illinois; defendants are Missouri residents.

search also leads us to conclude that in civil rights actions of this nature [false arrest], where a genuine issue of fact on the existence of probable cause for arrest is presented, the question should be submitted to the jury." 434 F.2d at 1230. The court further clarified the guidelines to be used in determining whether a jury question existed: "Where the supporting evidentiary matter of the moving party reveals 'unexpected gaps' or where the truth is not certain, the movant has not sustained the burden of demonstrating the absence of genuine issue of fact." 434 F.2d at 1231.

In holding the issue of probable cause was a jury question, *Giordano* discussed a reasonableness standard: "We think that the evidence adduced * * * coupled with the inferences therefrom, was such that reasonable minds could differ as to whether or not the officers acted in good faith and with probable cause." 434 F.2d at 1231–32.

■ In applying the two-pronged *Beck* standard to the current case, it is clear that the officer ordering Nix's arrest knew a crime had been committed. However, it is not clear that the officer was prudent in his belief that Nix had committed it.

According to Donald Sweeney's affidavit, he knew that two shootings had taken place on July 5, 1974. Witnesses stated two men had participated in the first shooting and identified one of those men. Witnesses stated further that a car, known to be owned by the plaintiff, had been seen when the first shooting occurred. Two men were arrested but the car was not found in the area. The car was later located at a parking lot "not at police station" with spent casings inside. The plates on the car in question were issued to Dennis Nix. Dennis Nix was at the police station. Knowing all this information, defendant Donald Sweeney ordered Nix's arrest.

In addition to the above information, consistent with Fed.R.Civ.P. 56, in granting summary judgment in the present case the trial court must have considered the affidavits of Nix himself and of Les McCullum, the officer who arrested Nix. While Nix's affidavit is of limited value, since the information contained therein would not have been known to Sweeney at the time he ordered the arrest, McCullum's is significant. McCullum's affidavit states one of Sweeney's own officers had told Sweeney that Nix had been at work at the time of the shooting. In addition, Sweeney knew that Nix had gone to the police station. Nix's behavior in voluntarily going to the police station, leaving three times to make phone calls, and returning and remaining in the vicinity for approximately one hour prior to his arrest, can be viewed as inconsistent with participation in the offense charged. Sweeney also knew only two people were present in the car at the time of the shooting and that two people had already been arrested, one of whom had been identified.

■ In the language of *Giordano*, the above information indicates "the truth is not certain." Since the record in this case established that the evidence, coupled with inferences therefrom, creates a question as to whether or not defendant's acts were warranted, it cannot be said as a matter of law that probable cause existed for the arrest. Thus, consistent with the Eighth Circuit's position in *Giordano*, summary judgment pursuant to Fed.R.Civ.P. 56 was precluded and the issue of whether probable cause existed for plaintiff Nix's arrest should have been submitted to the jury. *Giordano v. Lee*, 434 F.2d 1227 (8th Cir. 1970). *See also, Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir. 1975).

*Dismissal of the Village*

The Supreme Court held that municipalities are immune from suit under 42 U.S.C. § 1983 in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Owen v. City of Independence*, 560 F.2d 925 (8th Cir. 1977). Thus, the dismissal of the Village of Breckenridge Hills as a defendant in the § 1983 action was proper.

■ This complaint also alleges jurisdiction under 28 U.S.C. § 1331. An action against a municipality for violation of constitutional rights guaranteed by the fourteenth amendment may be properly brought under 28 U.S.C. § 1331 if the claim involves the deprivation of substantial constitutional rights and the amount in controversy exceeds the requisite $10,000 amount.[3]

■ The "1983 immunity" requiring defendant to be a person is not present in § 1331. However, the defense of sovereign immunity is not waived by § 1331; under many circumstances it remains to bar recovery from governmental units. *Smith v. Grimm*, 534 F.2d 1346, 1351 n. 6 (9th Cir. 1976); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529, 531–32 (8th Cir. 1967); *Dicke v. Cheyenne-Arapaho Tribes, Inc.*, 304 F.2d 113 (10th Cir. 1962); *Anderson v. United States*, 229 F.2d 675 (5th Cir. 1956).

The above cases involved the immunity of the Federal Government, its agencies, or Indian tribes under its protection. The availability of sovereign immunity as a defense on the part of state and local governments in § 1331 suits has not been fully resolved. In *Panzarella v. Boyle*, 406 F.Supp. 787 (D.R.I.1975), the court carefully considered this issue. 406 F.Supp. at 797, n. 14. It concluded that even if State law of sovereign immunity were recognized, the defendant School Committee enjoyed no State-conferred immunity.

Last year a panel of this court considered this issue in *Owen v. City of Independence*, 560 F.2d 925, 934 (8th Cir. 1977). A divided panel concluded that Federal law governed claims under § 1331 and, "contrary state immunity defenses cannot, consistent with the Supremacy Clause, protect the City." The divided panel also held "that the action of the City of Independence deprived Owen of liberty without due process of law * *." 560 F.2d at 937. That panel of this court was primarily concerned with allegedly false statements by a member of the city council made at a public council meeting. The council resolved that the investigative reports on Owen be referred to the county prosecutor for presentation to the grand jury. 560 F.2d at 936. The *Owen* court was dealing with a situation where the official actions of the city council allegedly harmed the plaintiff. 560 F.2d at 937.

■ By contrast, the present case involves alleged vicarious liability of the Village under the theory of *respondeat superior*. In keeping with the *Owen* decision, the question we must consider is whether Federal common law under § 1331 should recognize sovereign immunity for municipalities in cases of *respondeat superior* liability. After balancing the uncertain benefits of the *respondeat superior* doctrine against the certain encroachment on limited local government revenues, we conclude that Federal law should incorporate State principles in this area.[4]

■ Finally, we must consider whether the District Court erred in its determination that the claim alleged by Nix was in fact barred by the Missouri doctrine of sovereign immunity. Nix's only argument to avoid the doctrine is that his claim was for personal injury and property damage and thus within the exception of Mo.Rev.Stat. § 71.185 (1969),[5] if the Village carried liability insurance. Nix asserts the District Court should have taken as true Nix's aver-

**3.** It is difficult to assess the monetary value of constitutional rights claims. The sum claimed by the plaintiff in good faith at the time of filing must ordinarily be accepted. While plaintiff's claim in this case seems excessive on its face, that fact does not render it insufficient to meet the constantly eroding jurisdictional figure of $10,000. Thus, the claim is sufficient to establish jurisdiction under § 1331.

**4.** *Owen* recognized that different issues would be involved in suits for monetary judgments based on vicarious liability. 560 F.2d at 933, n.

**9.** It suggested that the scope of the Federal remedy might not include vicarious liability. *See Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976) (recognizing that "important considerations of federalism are additional factors weighing against" granting relief).

**5.** Mo.Rev.Stat. § 71.185 (1969), provides in part:

1. Any municipality engaged in the exercise of governmental functions may carry

ment that the Village had insurance. We will assume that the common-law torts of false arrest and trespass to chattels would involve personal injury and property damage under Mo.Rev.Stat. § 71.185 (1969). However, construing the complaint most favorably to Nix, we are still left with the fact that he seeks damages for violations of Federal statutes and the Constitution, rather than Missouri tort law.[6] Here the exception does not apply and the claim against the municipality is barred. We affirm the dismissal of the Village of Breckenridge Hills.

Judgment reversed and remanded for further proceedings.

---

liability insurance and pay the premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions, and shall be liable as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions to the extent of the insurance so carried.

**6.** *McArthur v. Pennington,* 253 F.Supp. ⸴420 (E.D.Tenn.1963), is similar to the present case in that municipal sovereign immunity was alleged to have been waived by the existence of liability insurance. The court there found waiver had occurred to the extent of the policy limits. *McArthur* is distinguishable from the present case because the City's liability in that case was based on State law, an issue not present in Nix's complaint.