Approved March 22, 1965.

Time: 3:59 P.M.

**Don C. DAYE, Plaintiff,**

v.

**CITY OF ALBANY, GEORGIA, Defendant.**

**Civ. A. No. 79–11–ALB.**

United States District Court, M. D. Georgia, Albany Division.

Sept. 5, 1980.

B. Sam Engram, Jr., Albany, Ga., for plaintiff.

James V. Davis, Albany, Ga., for defendant.

OWENS, Chief Judge:

The Fourteenth Amendment to the Constitution of the United States provides that:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Under this amendment Congress enacted a law numerically designated as 42 U.S.C.A. § 1983 which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Congress further enacted 28 U.S.C.A. § 1343 giving United States District Courts original jurisdiction of civil actions seeking redress under 42 U.S.C.A. § 1983.

Pursuant to that amendment and those congressionally enacted laws, plaintiff Don Daye sued the City of Albany alleging that a city police officer acting pursuant to an official City of Albany policy, arrested and imprisoned him without probable cause to believe that he had committed a crime thereby depriving him of his constitutional rights and damaging him.

On February 28, 1980, the court without a jury heard the evidence and argument of counsel and made a preliminary ruling, Exhibit "A". This now constitutes the court's findings of fact and conclusions of law setting forth in greater detail the court's ruling. Rule 56, Federal Rules of Civil Procedure.

■ Where an arrest warrant has not been issued, a law enforcement officer may not arrest a person unless he has probable cause to believe the person had committed or was committing a crime. "Probable cause exists 'if the facts and circumstances within [the enforcement officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the . . . [person] had committed or was committing an offense.' 379 U.S. at 91, 85 S.Ct. at 225." *Nix v. Sweeney*, 573 F.2d 998, 1001 (8th Cir. 1978), citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

The determination of probable cause does not rest upon a technical framework; instead it depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *See, Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

*Ellis v. Zieger*, 449 F.Supp. 25, 26 (E.D.Wis. 1978).

■ When a police officer or in this case a city, is sued under 42 U.S.C.A. § 1983 for unconstitutional arrest, the defense of good faith and probable cause is available to the officer and the city. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Then "[t]he test is not whether the arrest was constitutional or unconstitutional or whether it was made with or without probable cause. Rather, the issue is whether the police officer believed in good faith that the arrest was made with probable cause and whether the belief was reasonable. *Boscarino v. Nelson*, 518 F.2d 879 (7th Cir. 1975); *Brubaker v. King*, 505 F.2d 534 (7th Cir. 1974)." *Ellis v. Zieger, supra.*

Petitioner Donald Daye then working as a roofer on an Alabama job spent the weekend of August 25, 1978, visiting in Albany, Georgia. With a friend he went shopping in a Family Dollar Store located on the Sylvester Expressway in East Albany. As Mr. Daye was leaving the store, the mana-

ger, Sharon Hughes, asked Mr. Daye if he intended to pay for the shoes he was wearing, and Mr. Daye replied that the shoes were his, having been purchased earlier from another store. The shoes were brown corduroy with black rubber soles which were similar to shoes sold by Family Dollar for $3.99. Mr. Daye took off one shoe and held it up for Ms. Hughes to see its worn condition. Ms. Hughes suggested that Mr. Daye came in barefoot and continued to assert the belief that he must pay for the shoes. Mr. Daye asked Ms. Hughes to call the Police and Ms. Hughes in turn requested another store employee who had no direct knowledge of the incident, to telephone the police. She did, and as a result officer David Robbins arrived some 40 minutes later in response to the dispatcher's radio instructions to investigate a shoplifting incident. During the time it took the officer to respond, Mr. Daye voluntarily waited near the front of the store. Neither Ms. Hughes nor any other person even attempted to restrain him from departing even though at the time the laws of Georgia arguably would have authorized Ms. Hughes as a private person under these circumstances to arrest him, to wit:

27–211 (921 P.C.) Arrest by private person

A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, then the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion.

1933 *Ga. Code Ann.*

In accordance with a written memorandum from Police Chief Summerford which provided:

1. The form in question provides:

I hereby request the Albany Police Department or any of its police officers to take into custody an individual who has given the following name and address: *Donald C. Baye,* for the offense of theft by taking (Georgia Code Title 26-1802(b). This offense was committed in my presence, or in the presence of an employee of mine whose name is *Sharon Hughes*

August 14, 1974

*MEMORANDUM*

TO: All Personnel
FROM: Chief Leslie Summerford
SUBJECT: (Shoplifting) – Theft by Taking, Georgia Code 26–1802 (Section B, Paragraph 4)

Our policy in handling shoplifting cases, which is backed by the City Attorney and the City Commission, is listed below:

When you are called by a merchant to a store on a shoplifting case, have the person in charge of the business to fill out a shoplifting form and take custody of the shoplifter and bring him to the Station.

Book the shoplifter and take a copy of the signed shoplifting form and the shoplifter to the Sheriff's Office and turn both over to them. We retain the original of the signed shoplifter form.

*Be sure to have the form filled out completely.*

If a merchant calls concerning a shoplifter and the shoplifter is leaving or has left the establishment, detain subject and then have the merchant sign the shoplifting form.

/s/ Leslie Summerford
Chief Leslie Summerford

LS/sm

I have read the above memorandum on Shoplifting, and I fully understand it.

Sign below:

_____    _____

_____    _____

Albany police officers in general and Officer Robbins in particular, upon receiving a call that a shoplifting incident had occurred, had been going to the place where the shoplifting allegedly occurred, interviewing the complainant, getting the complainant to sign a written form,[1] taking the accused

_____, and the individual was found to be in possession of the following articles of merchandise for which the individual did not pay. *1 pair slippers*

_____

I agree that as soon as possible but in any event within twenty-four (24) hours from the time indicated hereon, I or my agent or employee will swear out a warrant for this individual charging him with the offense of theft by taking (Georgia Code Title 26-1802-(b).

into custody, transporting the accused to the county jail and leaving him in the Sheriff's custody. In each instance if the accused was present with the complainant, Officer Robbins upon being advised by the complainant that the accused shoplifted, assumed without asking that the accused had already been arrested pursuant to § 27–211. Before this incident he had handled some 75 to 100 shoplifting complaints in this manner.

In 1977 the legislature of this state enacted a due process type procedure for the handling of arrests by private persons. Even though that statute had been effective since March 23, 1977, it was not included in the city's written instructions to its police officers and was not utilized by its police officers. That statute, 1933 Ga.Code Ann. § 27–211.1, provided:

27–211.1 Procedures subsequent to arrest by private person

(a) A private person who has made an arrest pursuant to section 27–211 shall, without any unnecessary delay, take the person arrested before a magistrate as provided in section 27–212 or deliver such person and all effects removed from him to a peace officer of this State.

(b) A peace officer who takes custody of a person arrested by a private citizen shall immediately proceed in accordance with section 27–212.

(c) A peace officer who in good faith and within the scope of his authority takes custody of a person arrested by a private person pursuant to this section shall not be liable at law for false arrest or false imprisonment arising out of such arrest.

(Acts 1977, p. 902, eff. March 23, 1977.)
27–212 (922 P.C.) Duty of person arresting without warrant

In every case of an arrest without a warrant the person arresting shall without delay convey the offender before the most convenient officer authorized to receive an affidavit and issue a warrant. No such imprisonment shall be legal beyond a reasonable time allowed for this purpose and any person who is not conveyed before such officer within 48 hours shall be released.

(Acts 1956, pp. 796, 797.)

When Officer Robbins arrived at the Family Dollar Store, Mr. Daye and Ms. Hughes were standing in front on a concrete open air covered walkway. The officer was told by Ms. Hughes that Mr. Daye had been barefoot upon entering the store, had been seen stopping at a table where similar brown shoes are displayed for sale, and had been observed about to leave the store with brown shoes on his feet and without having paid for the shoes. Mr. Daye advised that he had purchased the shoes on a prior occasion from another store, did not take them from this store and did not owe for them. Mr. Daye took off the shoes, the officer looked at them, and as the bottoms clearly show, they were not new in appearance.

Without asking whether or not Mr. Daye had been arrested by Ms. Hughes, Officer Robbins in accordance with his instructions got Ms. Hughes to sign the usual form,[2] took Mr. Daye into custody and transported him to the county jail. There Mr. Daye was left in custody of the Sheriff.

Mr. Daye was left in the county jail sometime Saturday afternoon. Officer Robbins neither then nor later did anything to comply with his statutory duty to cause Mr. Daye "without delay" to be taken "before the most convenient officer authorized to receive an affidavit and issue a warrant . . ." 1933 Ga.Code Ann. § 27–211.

I further agree that I and my employee, _Sharon Hughes_, will be available at the time of trial to testify against this individual.

DATED this 28th day of Aug, 19 78 at 11:40 o'clock A.m.

Name of Store _Family Dollar_
_Sharon Hughes_
(Operator, Manager, or Other Person in Authority)
_Sharon Hughes_
Individual Who Saw Offense Committed

2. See Footnote 1.

That officer—a judge or justice of the peace—would have held a court of inquiry to examine into the accusation against Mr. Daye and if the inquiry were postponed to a later day, would have permitted Mr. Daye to exercise his statutory right to give bail and thereby be released from the county jail pending a later hearing. 1933 Ga.Code Ann. §§ 27–401 and 403.

Mr. Daye was confined for approximately two days in the county jail without an arrest warrant having been issued and without having been taken before a judicial officer. After approximately two days Ms. Hughes appeared and signed an affidavit alleging that Mr. Daye on August 26 committed the offense of theft by taking (shoplifting) one pair of $3.99 bedroom slippers from the Family Dollar Store. The affidavit is dated August 28 and the resulting arrest warrant is dated August 28. Some five days later Mr. Daye appeared before a judicial officer, made bail and was released.

At the time of his arrest and incarceration on August 26, Mr. Daye had several hundred dollars in his possession. Had he been promptly taken before a judicial officer for bail to be set for the accusation of $3.99 shoplifting, it is obvious he could have made bond with the money in his pocket.

On December 11, 1978, a jury of the State Court of Dougherty County found Mr. Daye not guilty of shoplifting.

■ What relief is Mr. Daye entitled to in this court under 42 U.S.C.A., § 1983 on account of having been arrested without a warrant and held for some two days without being taken before a judicial officer and without an arrest warrant having issued?

Officer Robbins and the City of Albany first contend that the city and its officer did nothing more than take custody of Mr. Daye after he had been arrested [3] by Ms. Hughes, the store manager, for shoplifting. They further say that the state law—1933 Ga.Code Ann. §§ 27–211 and 212—provides the constitutionally mandated due process protection that Mr. Daye as a person already arrested by a private citizen, is entitled to; that the state law was complied with by the city and its officer, and that Mr. Daye's constitutional rights were not violated. Assuming but not deciding that §§ 27–211 and 212 satisfy the due process requirements of the Constitution of the United States, this contention fails because as a matter of fact Ms. Hughes did not arrest or detain Mr. Daye; did not even tell Mr. Daye that he was under arrest or was being detained for shoplifting; and did not tell Officer Robbins verbally or by signing the city's form,[4] that she had arrested Mr. Daye. The form does not say "I have arrested Donald C. Daye for the offense of theft by taking, etc." It only says "I hereby request the Albany Police Department or any of its police officers to take into custody .. . ." Neither did the overall circumstances in which Mr. Daye was observed by Officer Robbins indicate to Officer Robbins that Mr. Daye had already been arrested by Ms. Hughes. At best Officer Robbins just assumed that Mr. Daye had been arrested by Ms. Hughes. Neither the law nor the Constitution authorize an arrest on account of an unfounded assumption that a private citizen has already effected an arrest for shoplifting.

■ The next contention of the City and its officer is that even if Ms. Hughes had not arrested Mr. Daye, what Ms. Hughes told the officer coupled with the officer's observation of Mr. Daye, the shoes and the store setting, was sufficient to warrant Officer Robbins in good faith and as a reason-

---

**3.** The word "arrest" means: "To deprive a person of his liberty by legal authority. Taking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand. *Ex parte Sherwood*, 29 Tex.App. 334, 15 S.W. 812. Physical seizure of person by arresting officer or submission to officer's authority and control is necessary to constitute an 'arrest.' *Turney v. Rhodes*, 42 Ga.App. 104, 155 S.E. 112. It is the taking, seizing or detaining the person of another, touching or putting hands upon him in the execution of process, or any act indicating an intention to arrest." Black's Law Dictionary, Revised Fourth Edition.

**4.** See Footnote 1.

able and prudent man, in believing that Mr. Daye had committed the offense of shoplifting, and in believing that he therefore had the good faith probable cause that is a defense to this § 1983 action, to arrest Mr. Daye. Assuming that a police officer is constitutionally authorized to arrest without a warrant on a misdemeanor—a proposition which is extremely doubtful in light of what the Supreme Court said in *United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)—were it not for the obviously used condition of the new $3.99 shoes that Mr. Daye was accused of taking and that Officer Robbins looked at, this court would agree that this officer himself could have had probable cause to arrest Mr. Daye. Those shoes, however, viewed in the light of the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act . . .", *Ellis v. Zieger, supra* at 26, were in such a used condition that regardless of what Ms. Hughes told the officer, the officer as a matter of common sense could not have believed Mr. Daye had taken a pair of new $3.99 shoes and thereby committed the offense of shoplifting. The officer himself did not have good faith probable cause to arrest Mr. Daye for shoplifting.

■ What then was the basis for Mr. Daye being arrested and taken to the county jail? The whole basis for the arrest, the entire cause of Officer Robbins taking Mr. Daye into his custody and delivering Mr. Daye to the county Jail—in truth and fact—was the August 14, 1974, policy of the City of Albany which the officer obeyed and which told him:

> When you are called by a merchant to a store on a shoplifting case, have the person in charge of the business to fill out a shoplifting form and *take custody of the shoplifter* and *bring him to the station*.
>
> Book the shoplifter and *take* a copy of the signed shoplifting form and *the shoplifter to the Sheriff's Office and turn both over to them*. We retain the original of the signed shoplifter form.

> *Be sure to have the form filled out completely.*
>
> If a merchant calls concerning a shoplifter and the shoplifter is leaving or has left the establishment, detain subject and then have the merchant sign the shoplifting form.

(Emphasis added).

This in reality told Officer Robbins that you don't have to determine whether or not a merchant has arrested a shoplifter; you don't have to determine whether or not you have probable cause to arrest a shoplifter; you don't have to follow the commands of Georgia law to take every person arrested without a warrant, before a judicial officer without delay. All you have to do is follow the city policy.

This city policy eliminated the constitutionally derived right of Mr. Daye and all other persons to be free from arrest without a warrant by a police officer except in those instances in which the police officer has probable cause to believe the person had committed or was committing a crime. This city policy caused this city police officer to arrest Mr. Daye and deliver him into the custody of the Sheriff of Dougherty County. Mr. Daye by being arrested in this manner, delivered into the Sheriff's custody, and further detained, was deprived of his constitutional rights. Pursuant to 42 U.S.C.A. § 1983, he is thus entitled to be awarded damages.

■ While Mr. Daye remained in the Sheriff's custody for some seven days following his arrest by Officer Robbins and his delivery to the custody of the Sheriff, the conduct of the officer and the city ceased to be the cause of his detention at the point that an arrest warrant was issued by the State Court of Dougherty County. Mr. Daye was then held pursuant to an arrest warrant and was then subject to that court's jurisdiction. For being held five days before bond was made, he must complain against that court and its officers; he cannot complain against the city and its officer whose conduct ceased when the arrest warrant issued.

Mr. Daye for violation of his constitutional rights is entitled to nominal damages of $1.00, to compensatory damages of $5,000.00, and to an award of reasonable attorney's fees[5] to be determined upon application therefore and all to be paid by the City of Albany.

SO ORDERED.