ROGERS, Circuit Judge,
dissenting.
I agree that the relevant inquiry in this case is whether, viewed objectively, the actions of Officers Edgell and Honsowetz indicated that they acted as law enforcement officers or as emergency medical responders. Because the nature of the officers’ actions is a mixed question of law and fact, this court should review the legal aspect of that determination de novo. Under de novo review, Officers Edgell and *447 Honsowetz acted as emergency medical responders, and thus they are entitled to qualified immunity.
Officers Edgell and Honsowetz are entitled to qualified immunity if their activities, objectively viewed, indicate that they were acting as medical responders as opposed to law enforcement officers. Maj. Op. at 439-40 (citing Peete v. Metro. Gov’t of Nashville & Davidson County, 486 F.3d 217, 219 (6th Cir.2007)). The jury’s determination does not control the legal aspect of this issue. The Supreme Court has held:
In determining whether a Fourth Amendment violation occurred we draw all reasonable factual inferences in favor of the jury verdict, but as we made clear in Ornelas v. United States, [517 U.S. 690, 697-99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)], we do not defer to the jury’s legal conclusion that those facts violate the Constitution.
Muehler v. Mena, 544 U.S. 93, 98 n. 1, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). In Muehler, a woman detained during a search of a house pursuant to a warrant sued the officers who had executed the warrant under 42 U.S.C. § 1983, arguing that “she was detained for an unreasonable time and in an unreasonable manner in violation of the Fourth Amendment.” Id. at 96, 125 S.Ct. 1465 (internal quotation marks omitted). The district court found that the officers were not entitled to summary judgment on the issue of qualified immunity, and the Ninth Circuit affirmed. Id. at 97, 125 S.Ct. 1465. After a trial, a jury concluded that the plaintiff had been detained in violation of the Fourth Amendment and awarded her $60,000 in damages. Id. The Ninth Circuit again affirmed. Id. The Supreme Court vacated and remanded the judgment, holding that even if all of the facts were construed in the plaintiffs favor, the defendants were entitled to qualified immunity. Id. at 97-98, 125 S.Ct. 1465. In doing so, the Court reviewed the application of the qualified immunity legal standards to the facts de novo, even though the appeal was from a jury verdict. Id. at 98 n. 1, 125 S.Ct. 1465.
In the present context, this rule requires this court to defer to the jury’s conclusions on factual issues such as whether Officer Honsowetz asked Alexandra McKenna if her father had assaulted her. This rule, however, requires independent appellate review of “whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.” Ornelas, 517 U.S. at 696-97, 116 S.Ct. 1657 (insertions in original) (quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). Here, the relevant standard concerns whether the officers acted as law enforcement officers or as emergency medical responders, and this court must therefore review the answer to this question de novo.
This conclusion is consistent with the policy rationale underlying Ornelas. In Ornelas, the Supreme Court considered the standard of review applicable to probable cause and reasonable suspicion determinations. 517 U.S. at 695, 116 S.Ct. 1657. The Court acknowledged that reasonable suspicion and probable cause “are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Id. (internal quotation marks omitted) (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The Court further noted that these two standards “are not readily, or even usefully, reduced to a neat set of legal rules.” Id. at 695-96, 116 S.Ct. 1657 (internal quotation marks omitted) (quot *448 ing Gates, 462 U.S. at 232, 103 S.Ct. 2317). This same characterization applies to the question of whether Officers Edgell and Honsowetz acted as law enforcement officers or as emergency medical responders; this is also a standard that deals with the factual and practical considerations of everyday life, and it would likewise be difficult to develop neat rules to delineate between law enforcement and emergency medical response. Like probable cause and reasonable suspicion determinations, this question of law enforcement versus medical response is a “fluid concept[ ] that take[s][its] substantive content from the particular contexts in which the standard! ][is] being assessed.” Id. at 696, 116 S.Ct. 1657. Even so, de novo appellate review is appropriate for all of these concepts; indeed, such review is “necessary if appellate courts are to maintain control of, and to clarify, the legal principles.” Id. at 697, 116 S.Ct. 1657. This is perhaps all the more true here, in the context of a newly enunciated standard. Deference to fact-finders, in contrast, would lead to “varied results” which “would be inconsistent with the idea of a unitary system of law.” Id.; see also Indmar Prods. Co., Inc. v. Comm’r, 444 F.3d 771, 785-86 (6th Cir.2006) (Rogers, J., concurring) (noting the importance of reviewing the legal aspects of mixed questions of law and fact de novo to prevent “inconsistent law” from being “applied to similarly situated persons, even after appeal to a single appellate court”).
This court’s varying precedents on the standard of review applicable to probable cause and exigent circumstances determinations do not provide a basis for ignoring the Supreme Court’s holdings from Muehler and Ornelas. Mixed questions of law and fact, such as probable cause and exigent circumstances determinations, are sometimes reviewed deferentially—when the relevant dispute concerns the underlying facts—and are at other times reviewed de novo—when the relevant dispute concerns the application of law to the underlying facts. This court’s precedents state both of these principles clearly with respect to both probable cause and exigent circumstances determinations. Hale v. Kart, 396 F.3d 721, 728 (6th Cir.2005) (“If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts.”); Ross v. Duggan, 402 F.3d 575, 585 (6th Cir.2004) (holding in a § 1983 suit that whether “pre-arrest probable cause existed on a given set of facts” is “a mixed issue of law and fact reviewed by the courts de novo” (citing Ornelas, 517 U.S. at 696-98, 116 S.Ct. 1657)); Peterson Novelties, Inc. v. Clinton Twp., 225 F.3d 659 (Table), 2000 WL 1091487, at *4 (6th Cir.2000) (“[T]he [district] court’s factual findings on the existence of exigent circumstances will be disturbed only if they are clearly erroneous.” (second alteration in original) (internal quotation marks omitted) (quoting United States v. Johnson, 9 F.3d 506, 508 (6th Cir.1993))); Russo v. City of Cincinnati, 953 F.2d 1036, 1043 (6th Cir.1992) (“This court reviews de novo the district court’s legal conclusions with respect to the issue of exigency.”). At other times, however, we have been less clear about when the underlying issues are legal or factual, and this may have led to some drift of the applicable standard of review between that for legal questions and that for factual questions. See Indmar, 444 F.3d at 785-86 (Rogers, J., concurring) (describing how such drift could occur). And in at least one case, we have apparently held that both deferential and non-deferential standards of review apply to the same issue:
The question of whether a set of historical facts amounts to probable cause is a mixed question of law and fact appropri *449 ate for de novo appellate review. In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.
Wrubel v. Bouchard, 65 Fed.Appx. 933, 936 (6th Cir.2003) (internal quotation marks omitted) (citations omitted).
The clearest example of review-standard drift is in Jones v. Lewis, 874 F.2d 1125 (6th Cir.1989). Jones stated simply:
Although, in a motion to suppress evidence in a criminal case, the factual determination whether exigent circumstances existed to excuse a warrantless arrest is a question for the court, when the issue arises in a civil damage suit it is properly submitted to the jury providing, given the evidence on the matter, there is room for a difference of opinion.
Id. at 1130 (citations omitted). In so holding, the court relied upon three other circuit court cases that, properly read, do not support such a flat holding.[1]
Outside of the exigent circumstances context, the general principle that we review the legal aspect of mixed questions of law and fact de novo is relatively well preserved. In the probable cause context, we recently outlined the distinction between the legal and the factual aspects of this mixed question of law and fact:
When no material dispute of fact exists, probable cause determinations áre legal determinations that should be made by a court. [Case citations omitted.]
All of these Sixth Circuit cases stand for the proposition that a jury trial is appropriate where reasonable disputes of material fact exist on facts underlying a probable cause determination. However, where only one reasonable reading of the facts is possible, i.e., where the facts that relate to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge. We admit that some of these Sixth Circuit cases are confusing and many of the factual recitals in them do not lend themselves to a clear understanding of *450 exactly what facts were in dispute. Nevertheless, the rule that probable cause is a legal question seems clear.
If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts. Similarly, with qualified immunity, a court can submit to the jury the factual dispute with an appropriate instruction to find probable cause and qualified immunity if the factual inquiry is answered one way and to find probable cause and qualified immunity lacking if the inquiry is answered in another way. However, the jury does not decide whether the facts it has found are legally sufficient to amount to probable cause or entitlement to qualified immunity.
Hale, 396 F.3d at 728.
But even if we have not always correctly applied Ornelas and Muehler to other aspects of our Fourth Amendment jurisprudence, we are bound to apply them correctly here. These cases provide two clear holdings: First, appellate courts review the legal aspect of mixed questions of law and fact under the Fourth Amendment de novo. Ornelas, 517 U.S. at 696-98, 116 S.Ct. 1657. Second, this standard of review applies to § 1983 suits as well as to criminal appeals, and it applies even when an appellate court is reviewing a jury verdict. Muehler, 544 U.S. at 98 n. 1, 125 S.Ct. 1465. We should therefore review the legal aspect of the determination of the nature of the officers’ actions de novo.
Viewed objectively in the light most favorable to McKenna, the evidence from trial establishes that Officers Edgell and Honsowetz acted as emergency medical responders. The officers responded to Alexandra’s 911 call reporting that her father appeared to be choking and was perhaps having a seizure. When the officers arrived, Alexandra directed them to her father’s room. The officers attempted to speak to McKenna but found him unresponsive. Officer Honsowetz then pulled Alexandra aside and asked her whether her father had taken any drugs, whether and where there were any medicines or illegal drugs in the house, and whether anything similar had ever previously occurred. Alexandra responded that her father had not taken any drugs, that the family stored medicines in her father’s bathroom cupboard, and that nothing similar had ever previously occurred. Officer Honsowetz also asked Alexandra if her father had tried to hit her, and she responded that he had not.
The officers then asked McKenna to sit up, and they instructed Alexandra to make the same request of her father. McKenna remained unresponsive. The officers eventually forced McKenna to sit on the side of the bed, despite his continued attempts to lie down. Once McKenna was sitting up, the officers asked him to put on his pants. When McKenna did not respond to this request, the officers tried to dress McKenna in his pants. At some point during this period, McKenna mumbled the word “stop.” When the officers attempted to stand McKenna up to finish dressing him in his pants, McKenna was able to free himself from the officers’ grip; McKenna fell onto the bed, and one of the officers fell backwards towards McKenna’s bedroom dresser. The officers then handcuffed McKenna’s wrists and ankles. McKenna’s only physical resistance to this point had been his attempts to lie down, and he had not to this point acted in an aggressive manner towards the officers. Once handcuffed, McKenna struggled against his restraints, and the officers held him down on the bed. Soon after the officers had handcuffed McKenna, the first firefighters and Emergency Medical Response personnel arrived at the McKenna *451 residence. McKenna, still handcuffed, was placed on a stretcher, taken downstairs to an ambulance, and then transported to a hospital.
After the arrival of the firefighters and EMS personnel, Officers Edgell and Honsowetz searched McKenna’s bathroom cabinet and the top drawer of his bedroom dresser. In searching the bedroom dresser, the officers ousted much of its contents. At some point, the officers requested that their dispatcher run McKenna’s license plate. The officers did not run McKenna’s information through the Law Enforcement Information Network, which is standard procedure whenever there is suspicion of criminal behavior.
The officers’ actions were more consistent with emergency medical response than with enforcing the law. The most general facts are the most probative: the officers arrived in response to a 911 call complaining of a medical emergency, and the results of the officers’ response were that McKenna was taken to the hospital in an ambulance and that he received medical treatment. McKenna was never arrested, incarcerated, or charged with any crimes. Cf. Mills v. Hall, No. 06-15689, 2008 WL 2397652, at *8 (E.D.Mich. June 10, 2008). Neither the handcuffing of McKenna nor the search of the bedroom and bathroom is indicative of criminal investigation. The officers’ handcuffing of McKenna might not have been an ideal response to McKenna’s medical needs, but if we believe Alexandra’s testimony that McKenna was not posing any threat to the officers at the time they handcuffed McKenna, the handcuffing also served no plausible investigative purpose.[2] The officers’ search of the bathroom cabinet and McKenna’s top dresser drawer was consistent with a search for medicines or illegal drugs that might explain McKenna’s condition. The officers did not search any locations unlikely to contain medicines or illegal drugs, and their choice to search the bathroom cabinet followed naturally from Alexandra’s identification of that cabinet as the likely location of any medicines in the house. The only activity during the entire encounter that might plausibly be viewed as more consistent with a criminal investigation than with a medical response was questioning Alexandra as to whether her father had tried to hit her. But even this question was not clearly inconsistent with a medical response, as it might have both assisted the officers in diagnosing the nature of McKenna’s condition and alerted them to any possible danger that McKenna might have posed. Even if this question was investigatory, it certainly cannot alone overcome the remainder of the evidence, all of which strongly indicates that Officers Edgell and Honsowetz were acting as emergency medical responders.
Because, objectively viewed, the officers were acting as emergency medical responders, they are entitled to qualified immunity. I would therefore reverse the judgment of the district court.

. In one cited case, Hindman v. City of Paris, Texas, 746 F.2d 1063 (5th Cir.1984), the Fifth Circuit cited its own precedent in explaining that “where facts relied upon to show probable cause in a § 1983 action [for false arrest] are controverted, they must be resolved by the jury before controlling legal principles are applied.” Id. at 1067 (insertion in original) (internal quotation marks omitted). Thus, the cited case held that the factual aspect of probable cause must be decided by the jury before the legal aspect can be decided by the court. This distinction was omitted when Hindman was cited by Jones. The same flaw ultimately underlies Jones’ citation to Giordano v. Lee, 434 F.2d 1227 (8th Cir.1970). Giordano stated that “in civil rights actions ... where a genuine issue of fact on the existence of probable cause for arrest is presented, the question should be submitted to the jury.” Id. at 1230. Giordano cited a Supreme Court case, Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), for this proposition. Giordano, 434 F.2d at 1230. But Adickes held only that summary judgment was inappropriate in a civil rights case where a purely factual dispute remained contested, 398 U.S. at 157, 90 S.Ct. 1598, and thus did not stand for the conclusion reached by Giordano that mixed questions of law and fact ought also to be submitted to the jury and reviewed, in both their factual and legal aspects, deferentially. Finally, the third case cited by Jones, Llaguno v. Mingey, 763 F.2d 1560, 1565 (7th Cir.1985), did clearly state that “where the issue [of probable cause] arises in a damage suit, it is ... a proper issue for the jury if there is room for a difference of opinion.” But the Seventh Circuit has since overruled this holding of Llaguno in light of Ornelas and Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Bell v. Irwin, 321 F.3d 637, 640-41 (7th Cir.2003). In the Seventh Circuit's words, Ornelas and Graham stand for the proposition that "[¡judges rather than juries determine what limits the Constitution places on official conduct.” Id. at 641.

. If, contrary to Alexandra's testimony, the handcuffing served the purposes of controlling McKenna's unpredictable behavior and of protecting the officers’ safety, then it was not unreasonable.
Firefighter Lambouris’s testimony that firefighters do not handcuff patients is not probative of any relevant issue. Firefighters do not handcuff patients because firefighters do not carry handcuffs. They do carry leather restraints, and they use them when necessary.